The People of the State of Illinois, *ex relatione* Robert C. Bristol, *v.* John Pearson, Judge of the Seventh Judicial Circuit of the State of Illinois.

*Attachment for Contempt.*

Where a writ of *mandamus* is delivered to a judge or other person to whom it is directed, and he refuses to obey it, an attachment will issue for contempt of Court.
A writ of *mandamus*, like a rule, may be served by an attorney, or any other person.
Where an alternative writ of *mandamus* has been served upon a defendant, and he neglects to return it, a peremptory writ may issue, without taking a rule against the defendant, to return the alternative writ.
An attachment from the Supreme Court, for contempt, may be directed "To any and all sheriffs of all counties of the State of Illinois."
Where a defendant has entered into a recognisance for his appearance in Court from day to day, he has waived all objections as to the manner in which he was brought into Court.
The Supreme Court does not entertain a doubt of its jurisdiction to award a writ of *mandamus* to a circuit judge.
An ex-judge cannot be compelled to sign a bill of exceptions, or to do other acts appertaining to the office of judge, after he has ceased to occupy that station; but, for contempt of Court, in refusing to obey a writ of *mandamus* requiring him to sign a bill of exceptions, while he was judge, the Court may punish him, notwithstanding his resignation of his judicial office.

Where a judge had refused to obey a writ of *mandamus* requiring him to sign a bill of exceptions, and had subsequently resigned his office, the Supreme Court refused to discharge him from custody, after his resignation, and fined him $100 for his contempt, and adjudged that he should pay the costs of all the proceedings against him.

An officer who pursues a person fleeing from the process of the Supreme Court, to a distant county, and brings him back, is entitled to the regular fees for serving the process, and for mileage, and no more. Other necessary expenses in arresting the defendant cannot be allowed him.

At the June term, 1840, of this Court, the counsel for the relator filed the following affidavit, and moved for an *attachment* against the defendant, for contempt of Court, in disobeying the writ of *mandamus* mentioned in the affidavit:

" State of Illinois, Cook county, ss.

" J. Young Scammon doth solemnly, sincerely, and truly declare and affirm, that at the April term of the Circuit Court of Cook county, held at Chicago, in said county, in the year eighteen hundred and forty, this affiant delivered, in person, in open Court, to John Pearson, judge of said Court, the original writ of *mandamus* of which the foregoing and within is a true copy,* and presented to him a copy of the bill of exceptions therein mentioned, to sign, to wit, on the twenty-fifth day of April last past, in a most respectful manner; and thereupon said judge caused the clerk of said Court to enter the order hereto annexed, marked A, and made a part of this affidavit; and afterwards, to wit, on the —— day of May, A. D. eighteen hundred and forty, during said term of the Court, said judge caused the following papers, marked B, to be served upon this affiant, by the sheriff of Cook county, and compelled this affiant to appear and answer the same, which he did. And thereupon the said judge declared that he should not sign said bill of exceptions, and did not sign the same, and has not since signed it, as this affiant is informed, and believes to be true.

" J. Young Scammon.

" Affirmed to according to law, May 29th, 1840, before the clerk of the Cook Circuit Court, and the seal of said Court affixed.

[L. S.] " Richd. J. Hamilton, Clk."

A.

" Ordered by the Court, that a rule be entered against J. Young Scammon, an attorney of this Court, to show cause why he should not be fined or imprisoned, or both, for a contempt of this Court, by Saturday next, at 10 o'clock A. M."

B.

" Ordered by the Court, that a rule be entered against J. Young Scammon, an attorney of this Court, to show cause why he should

---

* The writ is omitted because it is an exact copy (omitting the alternative part), except as to date, of the writ in 2 Scam. 196. The bill of exceptions is omitted for a similar reason. Reporter.

not be fined or imprisoned, or both, for a contempt of this Court, by Saturday next, at 10 o'clock A. M.

"A true copy of the record of the Cook Circuit Court of April 25th, A. D. 1840.

"Attest,                    RICHARD J. HAMILTON, Clerk.

"The sheriff of Cook county will execute the above rule.
                              "R. J. HAMILTON, Clerk.
"A true copy.
       "Attest,                    I. R. GAVIN, Sheriff."

B.
    "April term, 1840.
    "The People, &c.,        ⎫
              *v.*           ⎬ *Contempt, &c.*
    J. Young Scammon,        ⎭
"In the matter of the service of a writ of *mandamus* upon the Hon. John Pearson, Judge of the Seventh Judicial Circuit, in open Court.
    "Interrogatory first.  Did you not, before service of this writ of *mandamus* (in the case of Phillips *v.* Bristol) upon the judge of said circuit, in open Court, know that it had been, and would again be considered, by the judge of said Court, a contempt, to serve the same in open Court, by an attorney?
    "Interrogatory second.  If so, why did you, against the known views of the judge, proceed again to serve said writ in open Court?
    "Interrogatory third.  With whom, if any, have you counselled on this subject, and who has advised, counselled, or directed you to serve this writ?
    "Interrogatory fourth.  If you have taken advice of any judge, say of whom?"

The motion was allowed, and the following writ of attachment issued:

"State of Illinois, Supreme Court.
    "The People of the State of Illinois, to any and all sheriffs of all counties of the State of Illinois, Greeting:
    "We command you, and each of you, that you take the body of John Pearson, and that you have him before the Supreme Court of the State of Illinois, at Springfield, forthwith, to answer for a contempt of said Court, in refusing to obey a peremptory *mandamus* issued out of the said Court, and to him directed and delivered; and have you then and there this writ.

    "Witness WILLIAM WILSON, Chief Justice of our said Supreme Court, at Springfield, this 10th day of June, A. D. 1840.          "J. M. DUNCAN, Clerk S. C.,
    [L. S.]                    "*Per* JAS. H. MATHENY, D. C."

The writ was returned with the defendant in custody. The returns endorsed on the writ were as follows:

"*June* 16*th*, 1840.

"Served by delivering the body of the within named, to James Maxcy, deputy sheriff of Sangamon county.

"For serving, - - - - - - - .50

"Joseph Maxwell, Shff. Clay county,

"*Per* R. Moseley, Dept. Sheriff of Clay county."

"Executed by taking the body of John Pearson, who is in my custody.

"Travel 260 m., - - - - - $16 25
"Returning, - - - - - - 12½
                                              ――――――
                                              $16 37½

"Jas. M. Maxcy, Deputy Shff. of Sangamon county,

"For G. Elkin, Shff. of Sangamon county."

The defendant asked for time, and gave bail for his appearance from day to day.

The defendant then moved to quash the writ of attachment. This motion was overruled. He then filed the following motion:

"In the matter of John Pearson *ads.* ⎫
The People of the State of Illi- ⎪ Supreme Court, Ill., June
nois, attached to answer for con- ⎬ term, 1840.
tempt of this Court. ⎭

"And now at this day comes the said Pearson, by Gatewood and Douglass, his attorneys and counsel, and moves the Court to be discharged from custody;

"1. Because the first writ of *mandamus* in this matter was not duly served upon the defendant, being handed by counsel, and not by any officer of this Court authorized to execute process. Blac. Com. 357, 362; Bac. Abr., title Sheriff; R. L. 574 § 5, 578 § 1, 487 § 2, 119 §§ 3 and 4, 149 § 11, first part.

"2. Because the said defendant was not notified of the application for the peremptory *mandamus*, by the rule of this Court served upon him, requiring him to return the said first writ of *mandamus.* Bac. Abr., title *Mandamus* (D) and authorities; Salk. 434; 3 Com. Dig. 39.

"3. Because in this case, the defendant had signed a bill of exceptions in the case of Phillips *v.* Bristol, mentioned in this case, such an one as he could, as appears by the affidavit of J. Y. Scammon, now on file, and in so doing had exercised that discretion belonging to him, and required of him by law, as judge of the 7th judicial circuit, and having so done, the said defendant respectfully saith that he was not liable to the writ and subsequent proceedings

thereon, up to the present attachment.   Bac. Abr., title *Mandamus* (E);  Com. Dig. 24, 26, *post*;  14 East 395;   19 Johns. 247, 259 ; 7 Johns. 549 ; 4 Blac. Com. 110.

" 4. Because the proceedings are otherwise irregular.   Bac. Abr., title *Mandamus* (E) ;   Com. Dig. 24 ;  3 Wend. 304;  2 Wend. 301 ; 9 Johns. 345.

" GATEWOOD and DOUGLASS, for Deft."

*Per curiam :*  We are all of opinion that a writ of *mandamus*, like a rule, may be served by an attorney, or any other person ; and that the peremptory *mandamus* was correctly awarded.   The evidence was sufficient to warrant the issuing of an attachment for contempt.

Judge Smith thinks the attachment null on its face, by reason of its direction to all sheriffs of all counties of the State of Illinois.

The majority of the Court are of opinion that the attachment is sufficient on its face.   Judge Smith thinks the returns insufficient. The majority of the Court are of opinion that it is not material in what manner the defendant comes into Court.   Having in this case come into Court, and asked time to answer, and having entered into recognisance to appear and abide the decision of the Court, the defendant has waived all objections as to the manner of being brought into Court.

The motion is overruled.

*Motion overruled.*

The counsel for the relator then filed the following interrogatories :

" Supreme Court of the State of Illinois, June term, 1840.

" The People of the State of Illinois,⎫
    on the relation of Robt. C. Bristol, �btⒾ Attachment for con-
            *v.*               ⎬          tempt.
      "John Pearson.⎭

" Interrogatories propounded by said relator to be answered by the said John Pearson.

" Interrogatory 1.   Did J. Y. Scammon, on or about the twenty-fifth day of April, A. D. eighteen hundred and forty, at the Circuit Court in and for the county of Cook, at the last term of said Court, deliver to you a certain writ of *mandamus*, issued by the said Supreme Court, and bearing date February fourteenth, eighteen hundred and forty, commanding you to sign a certain bill of exceptions -in the case of Robert C. Bristol against John F. Phillips—and was the same delivered, in open Court, to you ?

" Interrogatory 2.   Have you, John Pearson, made a return to said writ of *mandamus*?  If so, when, how, and where ?   And where is said writ of *mandamus*?   And when was it last in your possession ?   And if not in your possession, what have you done with it ?

" Interrogatory 3. Did you, as judge of said Circuit Court, at the time the said J. Y. Scammon delivered to you the said writ of *mandamus,* direct the clerk of said Circuit Court to enter a rule against the said J. Y. Scammon, to show cause why he (said Scammon) should not be fined or imprisoned, or both, for a contempt of Court.

" Interrogatory 4. At the time the said Scammon answered said rule, did you not state in open Court that you would not obey said writ of *mandamus,* or sign the bill of exceptions recited in said writ, or words to that effect?

"G. SPRING, counsel for relator."

The defendant filed the following answer:

" John Pearson
      *ads.*
" The People of the State of Illinois, on the relation of Robert C. Bristol. } Supreme Court of the State of Illinois, June term, 1840.

" Attachment for contempt in not obeying a *mandamus.*

" This respondent to the first interrogatory, 'Did J. Y. Scammon, on or about the twenty-fifth day of April, A. D. eighteen hundred and forty, at the Circuit Court in and for the county of Cook, at the last term of said Court, deliver to you a certain writ of *mandamus* issued by the said Supreme Court, and bearing date February fourteenth, eighteen hundred and forty, commanding you to sign a certain bill of exceptions in the case of Robert C. Bristol *ads.* John F. Phillips, and was the same delivered, in open Court, to you?' Answers under oath, that J. Y. Scammon, attorney at law, did, at the last Circuit Court in Cook county, in open Court, on or about the twenty-fifth day of April, eighteen hundred and forty, deliver to this respondent, a paper or papers, which the said Scammon then and there stated, as near as he now recollects, was a writ of *mandamus* from the Supreme Court. But what was the date of the writ, and what were its precise words, this respondent does not now recollect; but his impressions are that it was directed to him, and not to the sheriff of said Cook county, which last fact, among other things, induced this respondent to think that there was some error in the clerk of the Supreme Court, in its phraseology and direction.

" This respondent would further answer and say, that the duties of his office were so urgent at the said term, that he could not find an opportunity to give the subject that examination which it deserves, and since which time or adjournment, he has been necessarily engaged in urgent private business, until he left Springfield, on the tenth instant, on his way to Juliet, Will county, his place of residence; passing through many counties where he had formerly practised law, and with a view, in part, to collect long

standing debts which have remained, for want of attention, since his election to the office of judge in the 7th judicial circuit.

" To the second interrogatory, ' Have you, John Pearson, made a return to said writ of *mandamus?* If so, when, how, and where? And where is said writ of *mandamus?* And when was it last in your possession? What have you done with it?'

" This respondent further answers, that the said writ of *mandamus* is now, as he believes, at his residence in Juliet, or was there when he left home, which was soon after the adjournment of Court, and without time to examine that and other papers and cases taken under advisement. This respondent has made no return to said writ of *mandamus*, if such was its character. Because first, that on the trial of this cause in eighteen hundred and thirty-nine, this respondent, as judge, signed a correct bill of exceptions for the said defendant, as he believed, and then thought his duty as a judge was fully discharged, according to the law as understood by him; secondly, because the rule or conditional *mandamus* obtained from this Court, as this respondent has incidentally learned, but which has never been read or seen by him, to his knowledge, was attempted to be served on him by one Justin Butterfield, an attorney at law, in open Court, at the November term, eighteen hundred and thirty-nine, in Cook county, and accompanied at the time of pretended service, with rude and offensive words and manner. This respondent, at the time, believed the law to be different as to the service of said writ, and confidently relied upon it for protection from the rudeness thus practiced by the attorney. This respondent, then, entertaining this view of the service of said paper, which was placed on the bench in front of this respondent, unopened, this respondent required the said Butterfield to take back, or away, the said paper, and on his refusal so to do, this respondent did then shove off the bench the paper aforesaid, and it has not been in respondent's possession, or seen by him since, to his knowledge, and he does not know, of his own knowledge, what said paper contained.

" But this respondent will here remark, that if it had been a rule or conditional *mandamus* from the Supreme Court, and served on this respondent by the sheriff legally authorized to serve writs, requiring this respondent to appear in this Court to show cause why a bill of exceptions should not be signed, that he would, if in his power, and not prevented by sickness, as was the case in December last, the last term of this Court, have appeared in the Supreme Court, and respectfully asked this Court if it had jurisdiction of the subject matter in a case where the law had given a discretionary power in the Circuit Courts to sign bills of exceptions, the correctness of them to be determined by the judge: and whether the Circuit Court is such an inferior Court as was known at common law, to which writs of *mandamus* only could issue, and also this respondent would respectfully have placed the question upon

The People *v.* Pearson.

the ground of the great burthen and hardship upon circuit judges, to be required, twice in each year, to be compelled to employ counsel, or attend to answer rules, obtained against them *ex parte*, and some other reasons might have been urged to this Court, with its permission, had the service of this writ of *mandamus* or rule been served by an officer: and if, upon a full view of the case, the Supreme Court had decided that it had the power to take cognisance of this specific case, then, and in that event, this respondent would, if not prevented by unforeseen circumstances, have appeared in the Supreme Court at that or some other term, to obey its mandates. This respondent would have, in such a case, felt himself bound to comply with the rule of law as laid down by the highest Court in Illinois, although he might honestly understand the rule of law differently; for, believing as he does, and upon his expressed opinions at all proper times, that courts, whether of superior or of inferior jurisdiction, can only act as interpreters, and not as makers of law. This respondent further answers, that he has not made a return of the writ of *mandamus* thus delivered to him by J. Y. Scammon, in April, eighteen hundred and forty, in open Court, because he still believed that the lawyer in the case, had no authority or right to interrupt the business of the Circuit Court, by coming into open Court and serving this or any other writ on the Court, and thus considered it no service; and this respondent did not then know, and not until recently, that Jesse B. Thomas, Esq., had filed any brief, or had consented to any order to be made in this cause, acknowledging the alternative *mandamus* or rule as served by the said Butterfield, in November, eighteen hundred and thirty-nine, and he was not aware upon what grounds the Supreme Court had proceeded in awarding this last writ of *mandamus*, and could not understand fully, the first part of the opinion of this Court, handed to him some time after the service as aforesaid, in April, eighteen hundred and forty, wherein this Court says, ' An alternative *mandamus* having been issued to the judge of the 7th Judicial Circuit Court, and he having made no formal return to the writ, nor returned the writ itself, but through the medium counsel filed what purports to be an argument against the power of this Court to take cognizance of the case, the Court are compelled to treat the case as one in which its authority has been disregarded.'

" This respondent had never given, in his recollection, Judge Thomas, or any one, power or authority to acknowledge the service of Justin Butterfield to be a legal service, or any notice, but this respondent always believed that the Supreme Court would not consider the service of a writ of *mandamus*, by an attorney, a legal service, although they might, after a proper service by an officer on the Circuit Court, proceed to take jurisdiction. This respondent further believed that this Court, although its order might give the party the writ of *mandamus*, that it was no way pointing out,

or directing the manner of service; but that in the opinion of this Court, this respondent supposed that this writ was to be executed, like all other writs issuing out of any court competent to grant a *mandamus*, as the Circuit Courts may do by the act of sixth January, eighteen hundred and twenty-seven. Upon this ground mostly, this respondent supposed the attorney, J. Y. Scammon, had mistaken the law as to the manner of service, and more especially after his answer to the rule herein spoken of; and, therefore, with this view of the subject, this respondent thought that this Court would not consider its authority disregarded, in not returning this last writ thus served, in April, eighteen hundred and forty, and more especially was this conviction forced on the mind of this respondent, from the fact that he had not given any one power, or used language, as he thought, from which service could even be inferred or claimed. This respondent has never understood, and does not now understand it to be the opinion of this Court, that an attorney can come into the Circuit Courts and serve writs of *mandamus* on the judges thereof, while presiding. But this respondent inferred from the expression quoted from the learned judge's opinion, handed to him in April or May last, and from J. Y. Scammon's answer, that this respondent had waived or acknowledged the service of the writ, as attempted to be served by the said Butterfield, or had, in this manner, by permitting his counsel to file a brief, acknowledged the service in that case only, and if so, that in relation to the law of jurisdiction, that this respondent had (though conscientiously) taken quite a different view of this subject, from this Court, yet never doubting or supposing that this respondent would differ at all with this Court as to the manner of serving writs of *mandamus*. If, however, this respondent should be wrong in his opinion as to the manner of service, he has been so sincerely, and not with a view or determination to contemn the power or orders of the Supreme Court, to whose exposition of the laws of Illinois, he, as an officer under oath, is bound to acquiesce, unless the order required an act against conscience. This respondent will, with the permission of this Court, under this interrogatory, remark that the brief, as it is called in the judge's opinion, was only made and sent to counsel, because of sickness, and as an index to some of the objections which presented themselves to this respondent, against the exercise of the powers claimed by the attorney; and it was never intended to be filed or offered to this Court as an argument to be preserved on file. The cases there put by this respondent, are for illustration only, against the supposed just exercise of the specific power thus set up by the attorney. They were, in short, but points from which this respondent hoped his able counsel, with the permission of this Court, on the motion drawn up, might satisfy the Supreme Court against the exercise of a power which, to this respondent, seemed incompatible with the correct and legal discharge of the multifarious duties of

the Circuit Courts, and might, in the absence of the judge and his inability to comply with the rule, do absolute injustice to the parties, and to conscience, in requiring him to sign a bill of exceptions which was at war with truth. It was a new question here, and one on which this respondent confidently believed that this honorable Court would be willing, at all proper times, to receive arguments in illustration of this new and important subject. But this Court, on that branch of jurisdiction, seem to have been satisfied without any arguments from this respondent's counsel, and he feels no disposition now to run *contra* to that rule, as laid down by the highest Court in Illinois. It is only as to the motives of this respondent, in refusing to obey that rule, when that rule has legitimately come to his knowledge, that this honorable Court will (it is apprehended,) enquire into, which must acquit or condemn this respondent.

"In relation to the third interrogatory, 'Did you, as judge of the Circuit Court, at the time the said J. Y. Scammon delivered to you the said writ of *mandamus*, direct the clerk of the said Circuit Court to enter a rule against the said J. Y. Scammon, to show cause why he (the said Scammon,) should not be fined or imprisoned, or both, for a contempt of Court?' In answer, this respondent says he did, he thinks, cause such an order to be entered, because this respondent then believed, from what he had formerly said in another case, that J. Y. Scammon knew the opinion of this respondent, as to the legality of such service by the attorney, and that, with a full knowledge of this repondent's expressed opinions on this subject, to so many different persons, this respondent did cause the order, or one very much like it, to be entered for a supposed contempt. But when J. Y. Scammon answered the rule, and quoted from the said brief, as filed by judge Thomas, in this cause, and then for the first time known to this respondent as filed, though Mr. Scammon had mistaken its meaning—and further, upon the assurance of the said Scammon, that no contempt was intended—this respondent, then acting as a Court, did, and for that reason, cheerfully discharge the rule, and from a desire then, and at all times, so to act as not to use the law for his personal gratification, but for the protection of the law itself.

"To the fourth interrogatory, 'At the time the said Scammon answered said rule, did you not state in open Court, that you would not obey said writ of *mandamus*, or sign the bill of exceptions recited in the said writ, or words to that effect?' This respondent cannot say now what words were used by him at the time alluded to; but his impressions are, that he did not say he would not obey said writ of *mandamus*, and believes he did not use words to that effect. But this respondent did then request the said Scammon to take back the said writ, and have the same served on him by the sheriff, which he, Scammon, refused; and in that case, it is now his recollection, as it was his design, to meet the question fairly and upon its merits. This respondent believes he did then, also,

inform the said Scammon that he could not, and as he then understood the law and has always believed, allow attorneys to interrupt the proceedings of the Court, by any future attempt to serve there writs—but when they were served in a legal way, by an officer appointed by the law, that then this respondent, as a Court, would answer to the Supreme Court in such a manner as he hoped would be satisfactory, or words to that effect, as this respondent now recollects, but does not pretend to state the exact words then used. And this respondent might have used stronger language, from the fact that he was thoroughly convinced that a contempt had been intended by the former service of these writs, and he wished hereafter not to suffer the court house to be, instead of an orderly place for the transaction of business, one of disorder and confusion, by this course of proceedings.

"This respondent has now, to the best of his ability, answered the several interrogatories propounded, and he relies upon his answers, with full confidence in their truth, to acquit him of any attempt, on his part, to contemn the laws, or any orders of this honorable Court. Believing as he does, that he, as an humble agent under oath, selected by the people to give efficacy to their laws, and not to set them at defiance, has done all in his power to prove that in law only there is true liberty, and without law and its just observance, the liberty is but a mere name. This respondent, thus feeling conscious of the correctness of his motives to uphold the laws and all courts that are constituted to sustain them, he is confident that this Court will see in his conduct, in the premises, no wish or intention to contemn its orders or powers.

"JOHN PEARSON.

"Sworn to and subscribed before me, this 23d day of June, 1840.

"J. M. DUNCAN, Clerk S. C.
"*Per* JAS. H. MATHENY, D. C."

The defendant then moved for his discharge. The Court took the case under advisement, and the cause was continued to the next term of the Court. At the next term, to wit, December term, 1840, the defendant filed the following motion:

"The defendant, by Gatewood, his attorney, moves the Court to discharge him from custody, for the following reasons:

"1. That said Pearson has been, since the date of the recognisance herein, elected to a seat in the Senate of Illinois, from the counties of Cook, Will, McHenry, Dupage, and Lake, and that he has resigned the office of judge of the Seventh Judicial Circuit, and is now in the discharge of the duties of the office of senator.

"2. Because of the facts aforesaid, the Supreme Court cannot imprison him, nor exercise any coercive measures over him individually.

" 3. Because, being no longer judge of the Seventh Judicial Circuit, he could not comply with any order of this Court controlling or directing the official duties of judge of the Seventh Judicial Circuit of Illinois.

" Wm. J. Gatewood, Atty. for Pearson."

J. Lamborn, Attorney General, for the people, admitted, in writing, that the defendant was elected senator at the August election, 1840, and that he has been discharging the duties of senator from the first Monday of December, 1840, up to the present time, and then was in the discharge of his duties as such officer.

The defendant then offered to surrender himself in discharge of his bail.

J. Young Scammon, contra :

The privilege from arrest is for the benefit of the country, and not of the individual. 4 Littell.

The privilege of exemption from arrest of a witness, is not the privilege of the witness, but of the court. 4 Harris & McHenry 295.

If the defendant, by virtue of his election to the office of senator, is privileged from arrest for contempt of Court, it is the privilege of the legislature, that its members shall be protected. As he cannot be arrested, his bail cannot take him, nor can he surrender himself. Suppose a defendant has been arrested on a capias, and is out on bail, and he is afterwards subpoenaed as a witness, who, by the statute, is exempted from arrest while going to, or returning from, or attending court, does his privilege as a witness discharge his bail? Can he surrender himself while attending as a witness? or can his bail surrender him?

But a member of the legislature is not privileged from arrest for a contempt of court.

An attorney is privileged from arrest, &c., but it is settled, that an attorney shall not be allowed his privilege as against the king. 1 Tidd's Pract. 268.

By the common law, peers of the realm, &c., are constantly privileged from arrest in civil suits, on account of their dignity, &c., but this privilege will not exempt them from attachments for not obeying the process of the court. 1 Tidd's Pract. 170.

By the statute, R. L. 101 ; Gale's Stat. 82, attorneys and other officers of court are privileged from arrest while attending, going to, and returning from courts ; but are they exempted from arrest for contempt of court?

The question is not now involved, whether the defendant can now sign the bill of exceptions. This proceeding is for his contempt of Court, in disobeying its process.

John Pearson, pro se, cited Gale's Stat. 235, and insisted that

his bail had a right to surrender him. He also insisted, that as he was no longer judge, there was no occasion for further proceedings against him, as it was the duty of his successor, if of any one, to sign the bill.

W. J. GATEWOOD, on the same side.

The motion was not granted, nor did the Court accept of his surrender; but, by consent of counsel, the cause was continued to the next term of Court, without bail.

After the re-organization of the Court, the defendant moved for a re-argument of the cause, before the new Court. Ford, Justice, objected, but the members of the old Court desiring it, it was allowed, and a re-argument ordered at the next term. At the next term, the cause was continued to December term, 1841, when the cause was submitted, by

J. YOUNG SCAMMON, for the people, and

W. J. GATEWOOD, for the defendant.

LOCKWOOD, Justice, delivered the opinion of the Court:

At the July term, 1839, of this Court, an alternative writ of *mandamus* was awarded to the judge of the Seventh Judicial Circuit, and presiding judge of the Cook Circuit Court, requiring him to sign the bill of exceptions mentioned therein, or show cause to this Court, at the December term, 1839, why he did not sign the same. At the December term, 1839, it appearing that due service had been made of the alternative *mandamus*, and that the judge had refused to obey the writ, or show any good cause why he did not comply with its injunction, a peremptory *mandamus* was awarded.

At the June term, 1840, affidavits were read, showing that the writ of *mandamus* had been duly served upon the judge in open Court, by the attorney in the original suit, and that the judge had not only treated the writ contemptuously, by threatening to fine and imprison the attorney for serving the writ, but actually caused him to appear and answer for a supposed contempt, in thus making such service. It also appeared that he had entirely disregarded the writ, and refused and neglected to make any return thereto. An attachment for this contempt was awarded at the June term aforesaid. During that term, the defendant was arrested on the attachment, and brought into Court, and admitted to bail. Interrogatories were thereupon filed, with the view of affording him an opportunity to purge himself of the contempt. To these interrogatories, answers were filed; after which, the Court heard the defendant, at great length, by able counsel, and with the view to give the defendant the benefit of a most mature and deliberate consideration of the case, as well as to ascertain whether

the Court, in the previous steps it had taken, had acted in conformity to the well settled principles of law, as it regarded the rights and obligations of the judge, in the premises, as also to determine what was proper to be done for the protection of suitors in the courts of this State, so as to secure to them a faithful administration of justice.

After the argument, the cause was continued until the December term, 1840. At this term, the defendant came and suggested to the Court that he had resigned the office of judge of the Seventh Judicial Circuit of this State, and moved to be discharged from the attachment, because this Court had, by the act of resignation, been ousted of its jurisdiction, and had therefore no longer any compulsory power over him.

After a full hearing of the case on the part of the defendant, at that time, the cause was continued until the present term, with a view of affording the defendant an opportunity of a re-hearing before the Court, as now organized.

A re-argument at this term having been declined, and the case submitted, it becomes necessary to come to a final determination of the whole matter in controversy. This Court cannot, for a moment, entertain a doubt, but that it has jurisdiction to award a *mandamus* to a circuit judge; nor can they doubt that the facts of this case imperiously call upon them to exercise the power.

From an examination of the answers of the defendant to the interrogatories propounded to him, no satisfactory conclusion can be drawn, to exempt him from the charge, that his whole course, in his repeated refusals to obey the mandates of the Court, have unfortunately had their origin in a spirit of contumacy and resistance to the authority of the Court, or in a degree of ignorance not possible to be imputed to a person holding the important station of a judge of the Circuit Court.

The defendant seems, throughout, to seek to shelter himself upon the ground of a want of due service of the writs of *mandamus*, both alternative and peremptory, because they were served upon him in open Court, by the attorneys for the party, and not, as he contends they should have been, by the sheriff.

Be that as it may, when the writs were directed to him, and commanded him to do a particular act, or as in the case of the alternative *mandamus*, or to show cause why he refused to do the act, he should, at least from self respect, have complied, and not sought to shelter himself under a pretence that the sheriff was the only person who could lawfully serve the writ. When, however, the defendant had learnt, as he did by the decision in relation to the service of the alternative *mandamus*, (1) that such a ground was not tenable, he should have yielded obedience to the peremptory *mandamus*. But what is his conduct on the occasion of the service

(1) 2 Scam. 189.

of this writ? An attempt to punish the attorney for serving the writ, and an utter disregard of the writ itself. Could this Court then hesitate, on the establishment of these facts, to award the attachment? It was demanded by every consideration of duty, and a due regard for the rights of suitors in courts of justice. It is now, however, contended, that whatever may have been the duty of the Court originally, in awarding the attachment, and coercing the defendant to sign the bill of exceptions, it has no longer jurisdiction over the person of the defendant, because he has ceased to occupy the judicial station, which he held when-attached. It is doubtless true, that the defendant, being no longer judge, cannot be coerced to do an official act, or exercise a judicial function, and for such reason we have directed in the cause, in which he has refused to sign the bill of exceptions, that the bill should be considered a part of the record, but still it does not follow, that because this Court cannot imprison the defendant until he shall sign the bill of exceptions, that it has no power to punish the defendant for his contempt of the law, in his refusal to obey the writ. This Court having jurisdiction over the defendant, while he was judge, to compel him to perform the required act, for the purpose of enabling it to do justice between the litigant parties, cannot be divested of the power to punish for the contempt, by the defendant's resigning the office of judge. · The offence being complete while he was judge, and subject to the authority of the Court, no act of the party can release or bar the punishment. One object in punishing contempts by imprisonment, it is conceded, is to coerce the party to do the required act; but because this object cannot be obtained, it by no means follows that no punishment should be inflicted. Punishment looks to example, as well as suffering. Both those objects are still attainable. But inasmuch as the defendant cannot perform the required act, it is the duty of the Court, to enquire if the objects of the law cannot as well be accomplished without, as with imprisonment. Imprisonment is the extreme rigor of the law, and as in this case it cannot accomplish one of its main designs, this Court deems it proper only to impose a fine. In the just and necessary exercise of this power, it would have afforded the Court pleasure to have seen, in the case, any mitigating circumstances from which any reasonable inference could fairly be drawn, that the course the defendant has permitted himself to adopt throughout the whole of this protracted affair, had been the result of unintentional error and misconception. But when it is seen that the facts disclosed, show not only wilful contumacy, in the first instance, but when the defendant had been informed from the written opinion of the Court, on the application for the peremptory writ of *mandamus*, what was the true position in which he stood, to persist again, under a flimsy and virtually overruled pretext, to disobey the writ, shows an obstinate determination to resist the au-

thority of the law, in utter disregard of the rights of the injured party, and of the duties of his station.

It is certainly matter of deep regret, that a case thus marked, should have called for the exercise of the summary powers of the Court, to inflict punishment on judicial delinquency. To pass it over lightly, would be a dereliction of duty. Every consideration of justice, and a sacred regard to the maintenance of the supremacy of the law, solemnly admonishes this Court, that those who violate its mandates, must expect a punishment to be inflicted commensurate to the wrong done; but more especially should it take care, that those, to whom is committed the sacred duty of the execution of the laws, do not escape, where they are themselves guilty of their infraction.

With these views before us, and in the discharge of a duty which we may not omit, it is considered that the defendant, John Pearson, is, and he is hereby adjudged to be, guilty of a high contempt, in refusing to obey the command of a writ of peremptory *mandamus* heretofore awarded by this Court, by the cause of Robert C. Bristol *v.* John F. Phillips, and duly served on him, and that for such his contempt aforesaid, it is adjudged and decreed that he pay to the people of this State, a fine of $100, and the costs of all the proceedings in relation to the writs of *mandamus* and attachment, and that the people have execution therefor.

BREESE, Justice, delivered the following separate opinion:

I did not hear any of the arguments in this cause, and consequently, am not prepared to express a definite opinion upon its merits. From the examination I have given the papers, I was inclined to the opinion, that the action of the defendant might be based on the ground of a misapprehension of his rights and duties as a judge of the Circuit Court, and not to a spirit of disobedience to the mandates of this Court. A just respect for the judicial tribunals of the country, acting within the line of their duty, requires that their decisions solemnly made should be regarded; if they are not, their usefulness will be greatly abridged, or wholly destroyed.

I do not doubt the power of this Court to award a peremptory *mandamus* to the Circuit Court, nor the duty of the Court to which it is sent to obey it. It is a just and necessary exercise of power, promotive alike of the ends of justice, and of the rights of suitors. If it is disobeyed, there is no alternative but the imposition of a fine or imprisonment. In adopting the former mode, under the circumstances of this case, the judge having resigned his office, since the attachment was issued, seems to be in harmony with acknowledged principles in such like cases.

DOUGLASS, Justice, having been of counsel for the defendant, gave no opinion.

*Judgment against defendant.*

J. YOUNG SCAMMON filed the following affidavit, and moved the Court to tax the costs in the cause:

"The People, *ex relatione* Robert C. Bristol, *v.* John Pearson.

"James. M. Maxcy, being first duly sworn, doth depose and say, that he was, in the year eighteen hundred and forty, a deputy of Garret Elkin, who was then sheriff of Sangamon county. That at the June term, eighteen hundred and forty, a writ of attachment issued out of the Supreme Court of this State, directed to any and all sheriffs of all counties of the State of Illinois, against John Pearson, to answer for a contempt of said Supreme Court, in refusing to obey a peremptory writ of *mandamus*, issued out of the said Court, and to him directed and delivered; which writ of attachment was delivered to this deponent to execute. That this deponent went immediately in search of said Pearson, who was in the city of Springfield, on the day of the issuing of said writ. This deponent further saith, that although he went immediately in search of said Pearson, he was not able to find him within the county of Sangamon, but learned that he had covertly and secretly left the city, and was fleeing from the process of this Court, for the purpose of evading justice; and this deponent, conceiving that it was his duty to pursue the fugitive, hired a horse, and gave chase to said Pearson, and travelled six days before he was able to overtake him. That he overtook him in Clay county, and caused him to be arrested by the sheriff of said county of Clay, who delivered the prisoner to this affiant, for the purpose of bringing him to Springfield, to answer for his contempt to this Court. That this deponent brought said Pearson to Springfield, being engaged in the pursuit of said Pearson, and in bringing him back to this Court, ten days. That this deponent necessarily expended, for his expenses in pursuing said Pearson, and bringing him back to Court, the sum of twenty-eight dollars and seventy-five cents, and for horse hire, the sum of thirty-eight dollars. This deponent therefore prays this Court to direct the clerk of this Court to tax the amounts thus expended by him, for expenses and horse hire, with the costs in the above entitled cause.

"JAMES M. MAXCY.

"Sworn and subscribed, this 13th day of January, 1842, before me.

"E. PECK, C. S. C."

The Court ordered, that the clerk tax in favor of the officer who served the writ of attachment, 6¼ cents per mile, for 260 miles travel, in serving and returning the attachment, and the cost of the service thereof, as allowed by law.